Laura Sheppard, Bar No. 265616
LRSheppardLaw@gmail.com
PO Box 5763
San Diego CA 92165
(858) 204-1290
Attorney for Jeffrey Perrotte H89472

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFFREY P. PERROTTE,** | Case No:  5:21-mc-00013 Perrotte |
| Petitioner, | |
| vs. | |
| **RIVERSIDE SUPERIOR COURT,** | **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241(d) & § 2254; MEMORANDUM OF POINTS & AUTHORITIES** |
| Respondent, | |
| **CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR),** | |
| Respondent, | |
| **DEPARTMENT OF ADULT PAROLE OPERATIONS (DAPO),** | |
| Real Party In Interest, | |
| **BOARD OF PAROLE HEARINGS (BPH),** | |
| Real Party In Interest. | |

## TABLE OF CONTENTS                                    Page:

Table of Authorities  ...............................................................................2

Table of Authorities  ...............................................................................3

Table of Exhibits  ....................................................................................5

Petition for Writ of Habeas Corpus  ........................................................6

    I.      Introduction  ...............................................................................6

    II.     Custody  ...................................................................................13

    III.    Jurisdiction  .............................................................................13

    IV.   Venue  ......................................................................................14

    V.     Parties  .....................................................................................14

    VI.   Exhaustion of Administrative & State Court Remedies, and
            Finality/Time Limits  ...............................................................16

    VII.  Factual Allegations  .................................................................20

    VIII. Claims for Relief  ....................................................................27

    IX.   Prayer for Relief  .....................................................................39

    X.     Conclusion  ..............................................................................40

Verification Signed by Counsel for Petitioner.........................................42

# TABLE OF AUTHORITIES

## Federal Cases

*Barker v. Wingo*, 407 U.S. 514 (1972) ....................................................39

*Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 ..........................14

*Brown v. Poole,* 337 F.3d 1155 (9th Cir. 2003)....................................................6, 41

*Calder* v. *Bul,l* 3 U.S. 386 (1798) ........................................................32

*Collins v. Youngblood* 497 U.S. 37 (1990)........................................................32

*Detainees of Brooklyn House of Detention for Men v. Malcolm*, 520 F.2d 392 (2nd Cir. 1975) ........................................................39

*Garner v. Jones,* 529 U.S. 244 (2000) ....................................................34

*Greenfield v. Scafati*, 277 F.Supp. 644 (1967) ........................................................33

*Johnson v. United States*, 529 U.S. 694........................................................ 32, 33

*Landgraf* v. *USI Film Products,* (1994) 511 U.S. 244 ..............................................32

*Long v. Gaines*, 167 F. Supp. 2d 75 (2001) ................................................ 29, 30, 39

*Morrissey v Brewer,* 408 U.S. 471 (1972)............................ 7, 15, 16, 28, 29, 30, 31

*Peugh v. United States,* 569 U.S. 530 (2013) ........................................................34

*Rouse v. Cameron*, 125 U.S. App. D.C. 366 (D.C. Cir. 1966)...............................39

## State Cases

*People v. Berch,* 29 Cal.App.5th 966 (2018)............................................... 17, 18, 30

*People v. Osorio*, 235 Cal.App.4th 1408 (2015) .............................................. 11, 23

## Statutes

5 U.S.C. § 701, et seq. (Administrative Procedures Act) ........................................13

28 U.S.C. § 1651 (All Writs Act) ........................................................13

28 U.S.C. § 2241 ........................................................ 13, 14

28 U.S.C. § 2242........................................................42

28 U.S.C. § 2244 ................................................................................. 17, 18, 19, 20

28 U.S.C. § 2254 ...................................................................................................14

Cal. Pen. Code § 3000 ........................................................... 8, 16, 30, 31, 35, 40

Cal. Pen. Code § 3000.08 ................................................................... 13, 28

Cal. Penal Code § 3000.1 ..................................................................... 7, 26, 34

Cal. Pen. Code § 3015 ...................................................................................10

Cal. Pen. Code § 3041 ............................................................................ 35, 36

Cal. Pen. Code § 3041.1 ...............................................................................36

Cal. Pen. Code § 3041.2 ...............................................................................36

Cal. Pen. Code § 3041.5 .................................................................................7

Cal. Pen. Code § 3057 ...................................................................................11

## Regulations

Cal. Code of Regs., Tit. 15, § 3768.3 ................................................... 24, 25

Cal. Code of Regs., Tit. 15, § 2041 .............................................................36

Cal. Code of Regs., Tit. 15, § 3763 .............................................................10

## Constitutional Provisions

U.S. Constitution, Article I, section 10 ....................................................37

California Constitution, Article VI, sections 21 and 22 ...........................36

California Constitution, Article I, section 9 ............................................37

## TABLE OF EXHIBITS

Exhibit A - 2016 Parole Violation Decision Making Instrument (PVDMI)

Exhibit B - Petition for Revocation and Probable Cause Determination forms

Exhibit C - Order granting habeas petition for Morrissey hearing

Exhibit D - Parole hearing transcript, June 2019 (Decision portion)

Exhibit E - Governor's emergency order, April 1, 2020

Exh. F - Governor's request for review of Perrotte parole grant, Oct. 2020

Exhibit G - Register of BPH actions (CDCR public document)

Exhibit H - State Direct Appeal of parole violation, Court opinion 2020

**Petition for Writ of Habeas Corpus**

Petitioner, Jeffrey Perrotte, petitions this court for a writ of habeas corpus to remedy by extraordinary relief his unlawful incarceration, a burden on his liberty that was "paid in a coin that the state cannot refund." (*Brown v. Poole,* 337 F.3d 1155(9th Cir. 2003) , 1161) and to injunctively relieve him from further unlawful current constructive custody by Respondents. By this verified petition, petitioner represents that:

I.<br>INTRODUCTION

Jeffrey Perrotte received a 15 year to life sentence for a 1992 conviction for second degree murder. He served over twenty-three years and was released on parole on February 10, 2015. (Perrotte's Minimum Eligible Parole Date ("MEPD") was April 3, 2003, see Exh. G) Subsequently, he has been a victim of an inordinate number and severity of due process violations and violations of his liberty.

First, he was arrested and charged with violating parole on December 11, 2016. All of the forms filed by the parole department to support revoking parole included false claims (Exh. B) The documents were nevertheless relied upon by the court to find that he violated parole. A probable cause ruling was made by a commissioner rather than a judge (over Mr. Perrotte's objection). California law requires a full and timely evidentiary hearing be heard by a judge (not a

commissioner *unless* consent is obtained from the parolee) before parole can be revoked and before the parolee can be returned to state prison custody. But the commissioner violated these rules and unlawfully remanded Perrotte to state prison custody on January 11, 2017, without having received a full evidentiary hearing as required by the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471 (1972).

From state prison, Perrotte filed a writ of habeas corpus challenging the lack of a full evidentiary hearing; his writ was granted November 7, 2017 (Exh. C), but the hearing not completed until March 29, 2018, over fifteen months after his arrest. This was a record-setting delay for an in-custody parole violation case in California.

During that fifteen-month delay, Perrotte received a first annual parole reconsideration hearing from the California Board of Parole Hearings ("BPH") on June 29, 2017. (Exh. G) This reconsideration hearing was *not* an evidentiary hearing about the veracity or severity of the violation, but rather, an evaluation of whether Perrotte was suitable on public-safety grounds for re-release into the community, pursuant to California Penal Code sections 3000, 3000.1, and 3041.5. At such a hearing, BPH assumes the violation(s) occurred and evaluates subsequent growth and insight. Yet BPH completed this hearing without even having the benefit of a record from an evidentiary hearing. Thus, the record relied

upon by BPH to justify retaining him in custody consisted of false information in the revocation forms filed by the parole department which had never been fully adjudicated nor subject to cross examination.

The timing of this BPH hearing violated California law as well, because a reconsideration hearing is supposed to take place "within 12 months of the date of any revocation of parole," yet Mr. Perrotte had never actually been subject to an evidentiary hearing only to a probable cause hearing, and thus his parole was never technically revoked at all. (Cal. Pen. Code § 3000, et seq.)

Thereafter, the grossly-delayed evidentiary hearing resulted in further due process violations. The parole department failed to provide the supporting documentation for the alleged violations, including an essential document called the Parole Violation Decision Making Instrument, or PVDMI. (Exh. A) Thus, defense counsel was unable to properly defend Perrotte, and the court was kept unaware of the false claims made by Parole in their filing.

Perrotte ended up spending over four years in state prison custody before being re-released by BPH. (Exh. G) All of this deprivation of liberty stemmed from alleged technical violations of parole that broke no state laws, harmed no one, and which were subject to the above due process violations.

Perrotte now comes before the federal court seeking redress of the violation of his *Morrissey* right to a timely evidentiary hearing before parole revocation. This violation was prejudicial in the extreme for several reasons:

- Perrotte was impaired from presenting a full defense to the two alleged technical violations of his parole conditions. An essential witness who could have exonerated Perrotte from one of the violations, had died by the time Perrotte received his hearing fifteen months late. An essential witness who could have mitigated the facts of the other alleged violation had permanently left the United States. Since the appropriate level of sanctions for a parole violation depends on the severity of the violation, the absence of these mitigating and/or exonerating witnesses led directly to the result – revocation and return to prison (even though he had already been remanded a year earlier, as a result of the court commissioner's premature order.)

- Fundamentally, Perrotte was deprived of his liberty without any due process protections for over a year, leading to a four year period of unlawful incarceration that likely would have never happened, had he been able to defend himself timely and with the due process protections afforded to him. This four year prison term (which also spanned the first four months of a pandemic) was a deprivation of liberty so unreasonable that it could reasonably be characterized as a human rights violation perpetrated on him

by the same system that includes controls intended to prevent such
deprivations from taking place. But the courts and parole department
ignored their own rules.

In addition to the due process violations caused by the delay in receiving a
full evidentiary hearing, Perrotte was also extremely prejudiced by a discovery
violation. Neither he nor his counsel, nor the Court itself as required under law,
were ever provided a copy of the Parole Violation Decision Making Instrument
(PVDMI). State law requires that the court be provided a copy of this instrument
and any attachments to it, for final adjudication (i.e. evidentiary hearing) (Cal.
Code of Regs., Tit. 15, § 3763). The PVDMI is an actuarial tool created by State
law to help regulate and delineate the appropriate level of sanctions for parole
violations. This tool and its recommendations are not for optional use; it is
mandated by law that the tool be used and its recommendation followed (except for
departures within a carefully prescribed framework for aggravating or mitigating
the recommended sanction) in *every* parole violation case throughout the State.
(See Cal. Pen. Code § 3015.).

As it turns out, the PVDMI in Perrotte's case was full of errors (likely
intentional falsehoods) that resulted in the recommended sanctions being
erroneously increased. (Exh. A) And, the parole agent who completed the
instrument used it in a way that violated the parameters of the instrument itself to

justify an increasing the sanction even further beyond the recommendation of the instrument. Perrotte's counsel objected to this discovery violation, but was forced to proceed without it.

There is California caselaw that requires full dismissal as a matter of law where revocation (and thus, return to state prison) is pursued against a parolee for insufficiently serious violations, where the PVDMI recommends intermediate sanctions rather than revocation, and where an increases sanction is sought, but intermediate sanctions have not been fully considered first. (*People v. Osorio*, 235 Cal.App.4th 1408, (2015).) Perrotte was preempted from arguing for dismissal because without the PVDMI, he could not mount an effective argument that revocation was inappropriately severe and that Parole had failed to consider intermediate sanctions. The PVDMI is where this information was located. (Exh. A)

Subsequent to, and compounding the deprivations and violations of Perrotte's rights already described, Perrotte was subjected to indeterminate incarceration, subject only to annual reconsideration hearings by the BPH. Despite no negative conduct, and substantial proactive rehabilitative efforts by Perrotte, the BPH did not release Perrotte until July 2020. (Exh. G) This violated the Federal protection against ex post facto punishment. At the time of Perrotte's original crime (1993), California Penal Code section 3057, subdivision (a) provided for a

maximum prison term of 1 year on a parole violation. In 2006, changes were made to Penal Code section 3000.1 which allowed for indeterminate incarceration (with annual consideration hearings) for parole violators who were on parole from an indeterminate ("life") sentence.  The BPH subjected Perrotte to this new law, and hence, to an indeterminate term of incarceration that ended up lasting nearly four years. He should have been subject only to a maximum term of 1 year, based on the law that existed at the time of the underlying crime. This was ex post facto punishment and denial of his fundamental liberty rights.

Lastly, the Board of Parole Hearings stole eight months of Perrotte's freedom. State law affords the Board and the Governor a total of 150 days to review and potentially reverse or rescind a parole grant decision in any murder case. (Cal. Pen. Code §§ 3041, 3041.1, 3041.2.) After that 150 days expires, the grant becomes final by operation of State law, and must be "executed" unless the offender has yet to reach his minimum eligible release date. (*Ibid*.) In Perrotte's case, the grant decision was made on June 12, 2019, and 150 days elapsed on November 9, 2019. Yet the BPH waited until November 26 to vote to schedule a rescission hearing. (Exh. G) (The motive to rescind did not arise from any negative conduct by Perrotte, but from a request by the Governor that the grant decision be "reviewed." See Exh. F) Thereafter, because of a delay triggered by the covid-19 pandemic, a rescission hearing was not held until July 17, 2020. (Exh. G) The

grant was affirmed, and he was released on July 29, 2020, eight months later than he should have been. While this unlawful action violated State law, it also violated Perrotte's Federally protected due process rights in ways unjustified under Federal caselaw.

## II.
## Custody

Petitioner is in the constructive custody of the Department of Adult Parole Operations ( "DAPO"), a division of the California Department of Corrections and Rehabilitation ("CDCR") He also is, and has been, subject to the jurisdiction of the Board of Parole Hearings ( "BPH"), also a division of CDCR. As a parolee, petitioner is subject to the direct control of respondents and their agents. (Cal. Pen. Code §§ 3000, 3000.08, 3000.1) and subject to re-incarceration at any time.

## III.
## Jurisdiction

This action arises under the Constitution of the United States and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq.

This Court has jurisdiction under 28 U.S.C. § 2241, as petitioner is presently in constructive custody under color of authority of the State of California, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241 and the All Writs Act, 28 U.S.C. § 1651.

Pursuant to 28 U.S.C. § 2254, subdivision (b), this court has jurisdiction to consider each of the claims for relief raised here, because each has been raised administratively through respondents' respective procedures and in the State courts of California. The details of each procedure and case numbers are provided in section VI below.

## IV.
## Venue

Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district where Petitioner currently is in the constructive custody of DAPO and where the underlying crime occurred (Riverside county, California).

## V.
## Parties

Petitioner, Jeffrey Perrotte, is a native and citizen of the United States.

The RIVERSIDE SUPERIOR COURT was responsible for remanding Perrotte to custody unlawfully in 2016, effectively revoking his parole without actually having authority to do so, in violation of his rights under *Morrissey* and his right to have the decision made by a judge. The Superior Court is thus responsible for his subsequent four years of unlawful incarceration.

The CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), is the supervising agency for both the Department of Adult Parole Operations (DAPO) and the Board of Parole Hearings (BPH). CDCR was also the agency that held Perrotte in unlawful incarceration during the time periods detailed in this petition.

CDCR and BPH are both responsible for unlawfully incarcerating Perrotte from Dec. 2017 until July 2020, because this time was in excess of the one year maximum exposure that his parole violation should have included (an ex post facto clause violation).

CDCR and BPH are both responsible for Perrotte's unlawful incarceration between November 2019 and July 2020 in violation of the BPH's statutory obligation to finalize its parole-grant decision 120 days after his final reconsideration hearing.

DAPO is responsible for Perrotte's unlawful incarceration between 2016-2020 resulting from its filing of false allegations in parole revocation reports resulting in his parole being unlawfully revoked. DAPO is also a real party in interest because it is the subdivision of CDCR which is currently in unlawful constructive custody of Perrotte on parole. If the unlawful actions described herein had not occurred, Perrotte would have been entitled to presumptive discharge of parole by now. (See Cal. Pen. Code § 3000, subd. (b)(6).)

15

## VI.
## Exhaustion of Administrative & State Court Remedies, and Finality/Time Limits

Petitioner has performed all conditions precedent to the filing of this petition as required by 28 U.S.C. § 2254, subdivisions (b) and (c), as detailed below.

### 1. Claim 1: Lack of timely *Morrissey* evidentiary hearing

Riverside superior court case no. RC1708203 – Perrotte was arrested on 12/11/16, and remanded to custody on 1/11/17 without receiving an evidentiary hearing. On 11/9/17, the court granted petitioner's habeas petition, ordering that he receive a full evidentiary hearing, which began on 1/11/18 and was completed on 3/9/18 – fifteen months after his arrest. Although he received a hearing eventually, there was significant prejudice resulting from the excessive delay. Petitioner sought relief during the pendency of the evidentiary hearing through petitions for bail and dismissal. After his parole was formally revoked at the conclusion of the hearing, he filed a collateral writ of mandate on 4/6/18 in the Court of Appeal case no. E070274, seeking a dismissal of the violation on the basis of the prejudicial delay in the hearing. This was denied on 9/21/18. He filed petition for review in the California Supreme Court in case no S251772. This claim was denied on 11/15/18. Thus, the claim is ripe for Federal review. The State courts' denial of Perrotte's claim was contrary to

established Federal law in the *Morrissey v. Brewer* decision and in precedents applying *Morrissey*.

Time to seek Federal relief on this claim has not expired because other properly filed post-conviction and collateral review petitions claiming due process violations in the same matter were being litigated from 2018 until October 2020. Thus, this time period "shall not be counted towards any period of limitation." (28 U.S.C. § 2244, subd. (d)(2).)

## 2.   Claim 2: Due Process Violations by Commissioner who violated State law

On January 11, 2017, when Commissioner Fouladi was first assigned in Riverside Superior Court to decide whether there was probable cause to support the revocation of Perrotte's parole, he objected and requested a judge; the request was denied. If the commissioner had made *only* a probable cause determination, this would have been lawful. But the commissioner remanded him to State prison without a full evidentiary hearing, functionally revoking his parole while lacking the authority to do so over the parolee's objection. (*People v. Berch,* 29 Cal.App.5th 966 (2018).) Perrotte filed a writ of habeas corpus raising this issue in the Riverside Superior Court on 7/30/19, case no. RIC1904134, upon the publication of *Berch, supra.* This petition was denied on 8/28/19. He filed this claim in the California Court of Appeal on 3/19/20, case

no. E074934. It was denied on 4/14/20. Because the Court of Appeal issued a summary denial with no opinion, it would have been futile to file a petition for review in the California Supreme Court. Thus, petitioner's state remedies on this issue are exhausted and it is ripe for Federal review. The State courts' denial of Perrotte's claim was an unreasonable application of the law.

Time to seek Federal relief on this claim has not expired because other properly filed post-conviction and collateral review petitions claiming due process violations in the same matter were being litigated from 2018 until October 2020. Thus this time period "shall not be counted towards any period of limitation." (28 U.S.C. § 2244, subd. (d)(2).)

### 3.     Claim 3: Ex Post Facto clause violation

During the evidentiary hearing in January-March 2018, Perrotte's counsel raised the ex post facto issue as an objection. After his parole was formally revoked, he raised the issue on direct appeal in the California Court of Appeal in case no. E070262. (Exh. H) This was denied on 7/20/20. He filed petition for review in the California Supreme Court in case no. S263995, which was denied on 10/22/20. Thus, petitioner's State remedies on this issue are exhausted and it is ripe for Federal review. The State courts' denial of Perrotte's claim is an unreasonable application of law, as it directly rejected Federal court precedent in favor of contrary State law. (Exh. H)

Time to seek Federal relief on this claim has not expired, because it has been less than one year since final State court judgment on this claim was made. (28 U.S.C. § 2244, subd. (d)(1).)

### 4.    Claim 4: Unlawfully extended incarceration by BPH

After Perrotte was *not* released upon the finalization date of his parole grant (11/9/19), and after the BPH provided notice that it intended to hold a rescission hearing, petitioner's counsel complained to BPH staff of this error. There is no administrative review process for appealing a decision of this type. Thus, petitioner next filed a petition for writ of habeas corpus in the Riverside Superior Court on 4/30/20, in case no. RIC2001309. This was denied on 7/29/20. He then filed it in the California Court of Appeal on 9/18/20 in case no. E075719. This was denied on 10/13/20. Because the Court of Appeal issued a summary denial with no opinion, it would have been futile to file a petition for review in the California Supreme Court. Thus, petitioner's state remedies on this issue are exhausted and it is ripe for Federal review.

The state courts' denial of Perrotte's claim was an unreasonable determination of the facts light of the evidence that was presented in State court proceedings and was contrary to clearly established Federal due process rights and liberty interests.

Time to seek Federal relief on this claim has not expired, because it has been
less than one year since final State court judgment of this claim was made. (28
U.S.C. § 2244, subd. (d)(1).)

## VII.
## Factual Allegations

1. **The nature of the alleged parole violations in 2016.**

Perrotte was charged with two violations of his parole, for traveling outside a
50 mile radius from his residence without a travel pass, and being in
possession of alcohol. There were substantial mitigating factors, and two
significant witnesses that were prevented from testifying because of the 15
month delay in Perrotte's evidentiary hearing, as follows:

a. Traveling beyond 50 miles from his residence: In 2015-2016, Perrotte was (and
is again) a business consultant for an international corporation (he holds a PhD
in business administration). His work involved travel throughout the United
States. Perrotte's parole agent in 2016, Sam Vella, had authorized Perrotte to
accept employment as Sr. Vice President in charge of U.S. sales operations for
a business consulting company, and authorized him to travel throughout the
country. Agent Vella indicated that providing a travel pass for each trip was
inconvenient for him, so instead Vella required Perrotte to report his travel by
telephone before leaving, and upon returning. This occurred successfully from
December 2015 until Vella notified Perrotte that he would have a new agent,

Alice Boulton starting on November 1, 2016. Subsequently, Perrotte attempted to contact Agent Boulton numerous times by telephone and text, providing detailed messages about his travel plans. She never answered. After two weeks of this, Perrotte contacted Vella, to alert him that Boulton was not responding. Vella advised Perrotte to continue doing what he was doing. On December 11, 2016 (the date of his arrest), Perrotte was traveling from a business meeting with a client named Larry Meadows in Encinitas, CA, and was on route to the Los Angeles airport to fly to Omaha, Nebraska for a week of meetings. Perrotte had provided this itinerary to Boulton several times in messages. He had never been told he did not have permission to continue this trip.

Most of these details were conveyed to the court through witnesses at the belated 2018 *Morrissey* evidentiary hearing, however an important witness was missing:  Perrotte's sister-in-law Rebecca Perrotte had been present at Perrotte's residence and had heard Agent Vella tell Perrotte that all his work-related travel was approved. Vella was unwilling to say this in his witness testimony: he would only admit he "didn't make an issue of" Perrotte's travel. Agent Boulton, of course, claimed otherwise.

Rebecca's testimony was not available at the evidentiary hearing because she tragically died of a sudden heart attack on January 14, 2018. The original evidentiary hearing was scheduled for January 13, 2017, but was vacated by

Superior Court Commissioner Fouladi when she prematurely and unlawfully revoked Perrotte's parole after only a probable cause hearing. Rebecca Perrotte's testimony would have helped prove that Perrotte did not willfully commit this parole violation at all: he had traveled in reliance on the permission and assurance of his former agent, Vella, that he had approval and should "continue doing what he's doing" by notifying Agent Boulton of his itinerary. At the very least, Rebecca's testimony would have corroborated Perrotte's story and helped to mitigate the severity of the violation.

b.  Possession of Alcohol: When Perrotte was stopped in Fountain Valley on December 11, 2016, a routine traffic stop, he was driving a rented company car. The officer conducted a parolee search of Perrotte's vehicle and found two sealed beer cans and a sealed 1 oz airplane sized bottle of liquor in the car. Perrotte received standard field sobriety screening and had a blood alcohol content of 0.0%. In 2017, Perrotte's employer conducted an independent investigation to make sure he had not violated company policy while driving for work; they spoke with the client that Perrotte had met with, Larry Meadows. Mr. Meadows confirmed Perrotte's story, which was that after their meeting at Meadows' home, Meadows had placed a bag containing a sandwich and the alcohol in Perrotte's car. Although Perrotte saw him place the bag in the car, Meadows did not tell Perrotte he had included alcohol. Perrotte later testified to

the parole board that when he ate the sandwich Meadows had provided, he saw the alcohol containers, did not consume any, and planned to throw it away at his next rest stop. But at the time of the evidentiary hearing in 2018, Meadows was unavailable to testify because he had relocated back to his home country of South Africa. His testimony would have mitigated Perrotte's actions of being "in possession," by corroborating that he had a rational reason for an otherwise risky behavior that violated his parole condition. Since California caselaw states that a non-serious technical violation does not, as a matter of law, justify revocation, such mitigation evidence would have been highly significant and relevant. (*People v. Osorio,* 235 Cal.App.4th 1408 (2015).)

## 2.  <u>Flaws and Perjury in the Parole Violation Filing:</u>

On December 11, 2016, petitioner was arrested under a materially-false probable cause determination form and Parole Violation Decision Making Instrument (PVDMI) produced by agent Alice Boulton.

a. On page 1 of the PVDMI (section A), Agent Boulton falsely inflated Perrotte's criminal record, by listing **two** "PC187 2nd" convictions. (Exhibit A) Perrotte has only one. It is unknown how this inflation of Perrotte's criminal record would affect the algorithm that the PVDMI uses to supply a recommendation, but it stands to reason that a higher response is warranted for a parole violator with two murders than one. The PVDMI's recommended sanction level became

unreliable when it was made based upon such serious false data as a second murder conviction.

b. On the PVDMI, Agent Boulton checked a box on page 3 & 4 that a "destabilizing factor" existed because the violation was related to the commitment offense. (Exh. A) State law provides that identifying stabilizing and destabilizing factors should guide the agent in deciding whether to override the PVDMI's recommended sanction by going to a higher or lower intensity level, which is what Boulton did. However, Boulton failed to *also* check the boxes identifying existing "stabilizing factors," even though multiple listed factors inarguably existed, including "presence of positive family, peer, or other social support," "job stability," "stable and appropriate residence," and "positive performance history on supervision." By omitting all relevant stabilizing factors, Agent Boulton disingenuously supported her desired result, which was to override and increase the sanctions recommended by the PVDMI. (Cal. Code of Regs Title 15, § 3768.3.) The recommendation was already unreliable due to the false inflation of Perrotte's criminal history, and Boulton's omission of relevant stabilizing factors further undermines the validity of her decision to further increase the recommended sanction.

c. On page 2 of the PVDMI (section F), the instrument provided a recommended response level "Moderately Intensive," which is the second level out of five

levels of available intensity. Only the fourth and fifth levels permit revocation and return to prison. On page 4, Agent Boulton included her recommendation of level four "Most Intensive A or B." This decision was not only unwarranted by the facts, but actually violated state law. State law specifies that an override may NOT adjust the response by more than one level. (Cal. Code of Regs., Tit. 15, § 3768.3.)

d. On page 1 of the probable cause determination form, Boulton alleged that petitioner was discovered behind the wheel of a vehicle with an "**open**" container of alcohol. (Exh. B) This was false; even the agent's narrative in the PVDMI (Exh. A, p. X) confirmed that he was discovered with **sealed** containers. Agent Boulton also failed to include the fact that Perrotte blew a 0.0% BAC. This lie and omission were highly prejudicial because in order to increase the recommended "Moderate" sanction and seek revocation, Boulton needed to use the PVDMI narrative to convince her supervisor to support her override. Because Perrotte's underlying offense was a DUI murder, claiming the alcohol containers were open, and failing to report that he had a 0.0% BAC served to manipulate the impression of the DAPO supervisor who reviewed Boulton's work.

e. Similarly, on page 1 of the PVDMI (section C), Agent Boulton falsely stated that Perrotte was identified by a police officer McCrae as "a driver passed out

behind the wheel." However, when the officer testified at the eventual evidentiary hearing, he stated Perrotte was *driving* when the officer contacted him. This was prejudicial in the same way as the previous item.

f.  All of these lies and misstatements contributed to the prejudicial effect of the *Morrissey* error. When Perrotte was first considered by BPH for re-release in 2018, he still had not had an evidentiary hearing nor received a copy of the PVDMI, so the lacked accurate information about his so-called violations when assessing his suitability for re-release.

### 3.  Actions of BPH in Failing to Release Perrotte Timely

a.  On June 12, 2019, petitioner was finally found suitable for parole by the BPH pursuant to Penal Code section 3000.1.

b.  The presiding BPH parole commissioner who decided to grant Perrotte's re-release described the inaccuracies and omissions by parole agent Boulton as "deeply troubling" and described petitioner as having *never* placed public safety at risk and as functioning at the "highest level" for a parolee. (Exh. D) In addition, the commissioner praised petitioner's community service as being "extremely rare" and, lastly, the commissioner opined that Perrotte had served a "disproportionate" amount of time for a technical violation which violated no laws. (Exh. D.)

## VIII.
## Claims for Relief

### A. Due Process Violation – Lack of a Timely Evidentiary Hearing

### (*Morrissey*)

Petitioner re-alleges and incorporates by reference the description of relevant facts found, on pages 5-10 and 17-18, *supra.*

Riverside Superior Court Commissioner Fouladi acted in excess of her jurisdiction when she remanded Perrotte to CDCR custody after only a probable cause finding on January 11, 2017. She vacated an evidentiary hearing that had been calendared for January 13, 2017 and erroneously indicated that the BPH would provide an evidentiary hearing. BPH was not responsible for providing one under current state law, it was the court's responsibility. (Cal. Pen. Code § 3000.08.) It was only through habeas litigation (while housed in state prison) that Perrotte secured his right to an evidentiary hearing (Exh. C), which was eventually held about 15 months after his arrest (January-March 2018).

The due process clause of the Fourteenth Amendment requires that a deprivation of Petitioner's liberty interest must be narrowly tailored to serve a compelling government interest. The State's interest in incarcerating Perrotte for an alleged parole violation did not justify violating his procedural and substantive due process right to a timely full evidentiary hearing before a revocation of his parole and return to prison.

27

"The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions." (*Morrissey* at p. 483)

*Morrissey* requires that a termination of the significant liberties afforded to a parolee must only occur "based on verified facts to support the revocation," which are, of course, developed through the process of an evidentiary hearing. (*Id.* at p. 496.) Here, Perrotte had witnesses who could provide exculpatory testimony, yet due to the one year delay, he was prevented from fully presenting his defenses. (Please see factual claims, pages 12-14, supra) There is clear prejudice here, because as the *Morrissey* court opined,

"The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that violation does not warrant revocation." (*Id*. at p. 488.)

Moreover, Perrotte was prevented for over *a year* from responding to the demonstrably false claims submitted by DAPO (in the PVDMI and related documents). As a result, these bad "facts" not only caused his parole to be

unlawfully revoked, but also followed Perrotte to his BPH reconsideration hearings and resulted in his incarceration being further prolonged by the BPH's annual decisions to find him unsuitable for parole in 2017 and 2018.

Though the *Morrissey* opinion did not set a specific time limit for a timely evidentiary hearing, it set a "few basic requirements" including that the hearing must be "within a reasonable time after the parolee is taken into custody." (*Id*. at p. 488.) In *Long v. Gaines*, 167 F.Supp. 2d 75, 89 (2001), the DC District Court opined that a delay of 86 days from arrest until final adjudication of a full evidentiary hearing was "at the outer limits of what is reasonable, given the flexibility permitted by the *Morrissey* Court." Moreover, *Gaines* opined that it would be "remiss in its responsibilities if it did not mandate the Commission's strict compliance with the clear and plain language of *Morrissey*." (*Id.* at p. 90.) In *Gaines*, petitioners sought and received injunctive relief for a pattern of delays in D.C.'s parole revocation process which the reviewing court called "deplorable." If in *Gaines*, 86 days was a "deplorable" delay that led to injunctive relief, the 15 month delay in Perrotte's case *must* justify remediation.

This petition describes the many ways that the delay prejudiced Perrotte, including 1) precluding two important mitigating or exonerating witnesses from testifying because they later became unavailable; 2) causing his re-release to be delayed for years for lack of a fully developed evidentiary record, and 3)

exacerbating the harm caused by the violation of his right to have the revocation ruled upon by a judge. Moreover, as *Gaines* demonstrates, "strict compliance" with *Morrissey* should be required, suggesting that no prejudice needs to be proven especially when the delay is so severe. The only appropriate remedy for this violation of his rights is an order vacating the revocation of his parole. Perrotte's parole period would thus be deemed to have run continuously since his release from prison in 2015, making him immediately eligible for presumptive discharge from parole pursuant to State law. (Cal. Pen. Code § 3000, subd. (b)(6).)

### B. Unlawful Revocation Order Made by a Superior Court Commissioner

Petitioner alleges and incorporates by reference the relevant facts described on pages 5-6, and 18-19, *supra.*

Under California state law, a court commissioner lacks the authority to revoke parole and remand a defendant/parolee to jail or prison *unless* the parolee waives their right to a judge. (*People v. Berch,* 29 Cal.App.5th 966 (2018); California Constitution Article VI, sections 21 and 22.) While a commissioner is authorized to make a probable cause determination, Commissioner Fouladi acted far in excess of this jurisdiction. She vacated the evidentiary hearing to which *Morrissey* entitled him, and remanded Perrotte to state prison without it. Her order was treated as an effective revocation of his parole for over a year until Perrotte received writ relief and a *Morrissey* hearing.

The commissioner's misuse of her statutory authority (for which the Riverside Superior Court is named as a respondent in this petition) is an issue for Federal court because of how the violation of State law allowed an inexperienced or incompetent commissioner to adopt a power she never should have had, and misuse it. Commissioner Fouladi's *Morrissey* error was the direct cause of serious and prejudicial violations of Perrotte's substantive federal due process rights and his fundamental right to liberty.

The only remedy for this violation is that the revocation order by the commissioner should be vacated, as she lacked the authority ever to make it. Thus, Perrotte's parole period should be deemed to have run continuously since his release from prison in 2015, making him immediately eligible for presumptive discharge from parole. (Cal. Pen. Code § 3000, subd. (b)(6)

## C. Ex Post Facto punishment

California parole law has dramatically changed in recent years, but the ex post facto protections have remained a constitutional principle for more than two centuries, barring increased punishment for a crime beyond the punishment the law specified at the time the crime was committed. (*Calder* v. *Bull,* 3 U.S. 386 (1798).)

The federal ex post facto clause (U.S. Const., art. I, section 10, cl. 1) prohibits legislation "'which makes more burdensome the punishment for a crime, after its commission....'" (*Collins v. Youngblood* (1990) 497 U.S. 37, 42.)

The ex post facto prohibition is intended to ensure that individuals have " 'fair warning' about the effect of criminal statutes [and] 'restricts governmental power by restraining arbitrary and potentially vindictive legislation.'" (*Landgraf* v. *USI Film Products* (1994) 511 U.S. 244, 267.)

The U.S. Supreme Court stated,

"postrevocation penalties are attributable to the original conviction, not to defendant's new offenses for violating their supervised release condition."

(*Johnson v. United States*, 529 U.S. 694, 695 (2000).)

The *Johnson* court opined in no uncertain terms the exact principle at issue here, explaining that "postrevocation sanctions ]are] part of the penalty for the initial offense," and if a subsequent change in law causes "reimprisonment as punishment for the violation of the conditions of supervised release" this is an unlawful ex post facto punishment. (*Id*. at p. 700.) The *Johnson* court avoided ruling that the ex post facto ban was violated only by finding that the new law in that case never should have been imposed retroactively. *Johnson* points out that for ex post facto analysis, new conduct that violates parole conditions does not permit a new law to govern the punishment "simply because the violation was the occasion for imposing the sanctions." (*Id*. at p. 702.) The court rejected that theory, stating, "the relevant conduct is the initial offense." (*Ibid*.)

*Greenfield v. Scafati,* 277 F.Supp. 644 (1967), on which *Johnson, supra,* relied, is a case involving retroactive application of parole violation statutes. In that case, a prisoner who was incarcerated following revocation of his parole challenged a Massachusetts statute that was adopted after he committed his underlying offense. The new statute prohibited a parole violator from receiving good-conduct credits during the first six months in custody following revocation. The reviewing court held that the application of the new statute violated the ex post facto clause because the statute prevented the prisoner from being released as early as he might have been, had he been able to amass good-conduct credits under the statute that was in effect at the time of the underlying offense. A substantial increase in imprisonment for a parole violation, "is far from inconsequential. To effect this by legislation enacted after the offense for which sentence was imposed cannot be constitutionally supported." *(Id.* at pp. 645-646.)

In *Garner v. Jones,* 529 U.S. 244, 299 (2000), the U.S. Supreme Court stated that a change in parole law is ex post facto when it " creates a significant risk of prolonging ... incarceration."; see also *Peugh v. United States,* 569 U.S. 530 (2013) [law that affected the decisionmaker's exercise of discretion in fixing term created a significant risk of prolonging incarceration and thus was ex post facto].)

In the present case, the parole penalties that must be applied are the laws in place at the time of Perrotte's original crime. The law then carried a maximum of

one-year of incarceration for a parole revocation. Subsequent change to Penal Code section 3000.1, subdivision (d), provided that the BPH shall consider paroling the inmate at *annual* parole consideration hearings, with no maximum term.

Instead of having a maximum exposure of one year, Perrotte had *unlimited* exposure, up to his entire lifetime, subject to the subjective decision of a parole board; a far cry from the maximum of one year under the previous version of the law. This is legally indistinguishable from the prohibition in *Peugh v. United States, supra,* 569 U.S. at p.555, of a change in sentencing guidelines which were subject to some judicial discretion. In both cases, the determinative issue is whether it is the change in the law alters the "formula" that will be used by the decisionmaker, such that an increase in punishment is a "significant risk." (*Ibid*.)

Moreover, by the time Perrotte even had a *Morrissey* hearing and had his parole lawfully revoked by a judge, he had already served more than a year, thus, his punishment was *already* increased beyond the maximum exposure permitted by the law that was in place at the time of his underlying crime. After the fact, it is thus evident that he received a harsher punishment as a direct result of an ex post facto application of a law that was not in effect at the time of his underlying crime.

The only appropriate remedy is a ruling that this was an ex post facto punishment, and that all incarceration in excess of one year was unlawful. The

practical impact is that his parole period should be deemed to have started on

December 11, 2017 (one year after his arrest), and have been running for nearly

four years continuously since then. This will have a dramatic impact on the date of

his eligibility for presumptive parole discharge. (Cal. Pen. Code § 3000.)

### D. Deprivation of Liberty by BPH

Petitioner alleges and incorporates by reference the relevant facts described

page 7, 11-12, and 17, *supra.*

Perrotte was finally found suitable for re-release on parole by BPH at his

third annual reconsideration hearing on June 12, 2019. State law allows the Board

to review, vacate, rehear or rescind a proposed parole decision (including a

reconsideration) for any reason during a 120 period, after which the decision

becomes final. (Cal. Pen. Code § section 3041, subd. (b)(2); Cal. Code of Regs.,

Tit. 15, § 2041, subd. (f)) State law also permits the Governor 30 additional days to

reverse a parole grant in any murder case. (Cal. Pen. Code § 3041.2.) Finally, the

Governor has authority to request review of a parole decision, but a plain reading

of the statute indicates that he must *request* review during the time period that the

Board *has* jurisdiction to review the decision, i.e. before it is final. (Cal. Pen. Code

§ 3041.1.)

On November 9, 2019, 150 days had passed and no action was taken.

Perrotte's parole grant should have become final and should have been

immediately "executed." (That is, he should have been physically released from the prison.) State law provides only one reason why the grant should not be executed upon finalization, and that is if the prisoner has not yet reached his minimum eligible release date. (Cal. Pen. Code § section 3041.) This exception did not apply to Perrrotte, whose minimum eligible parole date was in 2003.

The BPH received a request from the Governor to review Perrotte's parole grant on October 10, 2019 (Exh. F), but ignoring the above rules, it kept Perrotte incarcerated while scheduling a vote to calendar a rescission hearing. This vote took place on November 26, 2019, long past the 150 day finalization date. (Exh. G) Inexplicably, the rescission hearing was then scheduled for the distant date of March 18, 2020. While the Governor's request for review on 10/10/19 was within the 150 day review window, there is no statutory provision that tolls this window simply because a review has begun. A plain reading of the statutes would require that any BPH review (whether internally sought, or requested by the Governor) must be completed within the 120 day review period before the BPH's decision became final, or at latest, within the Governor's additional 30 day review window. Yet 150 days expired on 11/9/19, long before the 3/18/20 date that the BPH calendared for Perrotte's rescission hearing. (Exh. G)

Thereafter, the covid-19 pandemic began, and caused this already-severe violation of Perrotte's fundamental right to liberty to be exacerbated even further.

California's parole system "shut-down" along with most other public activities on March 12, 2020, and hearings were temporarily paused. But hearings were re-started using a remote video process only a few weeks later, on April 1, 2020. (Exh. E) Yet Perrotte's rescission hearing was not re-calendared swiftly. Instead, it was capriciously postponed until July 17, 2020. (Exh. G) Finally, on that date, a panel affirmed the grant from over a year earlier, and Perrotte was released twelve days later on July 29, 2020.

The BPH acted with callous disregard for State law, for Perrotte's right to liberty, and far in excess of its own jurisdiction under statutory time-limits. And although this claim mostly concerns application of State law, it takes on Federal constitutional significance in light of the extreme deprivation of Perrotte's liberty, and the State court's unreasonable application of the law and unwillingness to remedy the situation. Multiple habeas and bail petitions were filed seeking Perrotte's freedom especially following the commencement of the covid-19 pandemic, when prison incarceration became a massive health risk and terrifying experience. While this was true for every incarcerated person in America, the frustration and emotional distress was especially severe for Perrotte because he was held entirely in unlawfully for over eight months after his parole grant became final and should have been executed, as a result only of BPH's total flouting of its own statutory obligations.

None of the delay between 11/9/19 and 7/29/20 is justifiable on any basis. There is no rationale for not "executing" the decision to release Perrotte after it became final on 11/9/19. The Governor's request for review does not, by any rational interpretation of state law, extend or toll the 150 day review period to prevent a BPH decision from becoming final by operation of the statutory time limits. This deadline was long past by the time the covid-19 pandemic hit. And this additional delay - from March until July of 2020 - was totally unjustifiable, because the BPH developed the capacity to conduct hearings remotely on 4/1/20. (Exh. E)

Perrotte should have been released by operation of State law four months *before* the pandemic even began, but the delay until July adds Federal significance to this claim. Even if the Federal court refuses to consider the BPH's violation of its own State statutory time limits, the BPH violated Perrotte's fundamental liberty interest by delaying his rescission hearing for four additional months, blaming the covid-19 pandemic. "A lack of resources, while deplorable, cannot justify continuing violations of parolees' constitutional rights." (*Barker v. Wingo*, 407 U.S. 514, 531 (1972); see also *Rouse v. Cameron*, 125 U.S. App. D.C. 366 (D.C. Cir. 1966), *Detainees of Brooklyn House of Detention for Men v. Malcolm*, 520 F.2d 392 (2nd Cir. 1975), *Long v. Gaines*, 167 F. Supp. 2d 75, 90 (2001).) The BPH had its hearings up-and-running on April 1, 2020 yet delayed Perrotte's already-

overdue release until July 29, 2020 for no reason. The foregoing Federal court opinions show that this was not justified, especially when compounded upon such a clear violation of State law which has gone unremedied in State court.

### IX.
### Prayer for Relief

Petitioner has no plain, speedy, and adequate remedy in the ordinary course of law other than by this petition, in that there is no other adequate procedure to require respondent to use discretion governed by legal rules to do justice according to law and the Constitution, or to otherwise entitle petitioner to enjoy the benefits sought through this petition.

WHEREFORE, petitioner prays:

1. If claims 1 and/or 2 are found to have merit, the 2016 revocation should be retroactively dismissed. Perrotte will thus be considered to have been on continuous parole since February 10, 2015, this court should issue a writ of habeas corpus ordering DAPO to discharge him from parole, absent good cause to retain him, pursuant to state law. (Penal Code § 3000, subd (b)(1).)

2. If claim 3 is found to have merit, this court should issue a writ of habeas corpus declaring that Perrotte should have been re-released from incarceration no later than December 11, 2017, and his period of parole should not have been tolled beyond that date. Accordingly, the court should

order DAPO to discharge him from parole when required by state law. (Cal. Pen. Code § 3000, subd. (b)(6).)

3. If claim 4 is found to have merit, this court should issue a writ of habeas corpus declaring that Perrotte's incarceration between Nov. 9, 2019 and July 29, 2020 was unlawful, and that his period of parole should not have been tolled beyond Nov. 9, 2019, and that he should be discharged accordingly from parole when required by state law. (Cal. Pen. Code § 3000, subd. (b)(6).)

4. Depending on which claims this court finds meritorious, this could should issue a writ ordering declaratory, injunctive, and compensatory relief for the unlawful deprivation of Perrotte's liberty for a minimum of 9 months to a maximum of nearly four years.

5. Order an evidentiary hearing as needed.

6. Grant any further relief deemed necessary to immediately end the irreparable harm being suffered by petitioner as a result of these fundamental miscarriages of justice, and to prevent similar harm from being imposed upon other parolees.

## X.
## CONCLUSION

Petitioner respectfully requests the Federal District Court for the Central District of California provide a remedy for an accumulation of due process

violations that have severely harmed and unlawfully deprived Perrotte of his fundamental right to liberty, burdens he has "paid in a coin that the state cannot refund." (*Brown v. Poole, supra,* 337 F.3d at p. 1161). As he remains in constructive custody as a parolee, he continues to be burdened by the state's unlawful conduct through its judicial and executive agencies, the Superior Court of Riverside County, the California Department of Corrections and Rehabilitation, the Department of Adult Parole Operations, and the Board of Parole Hearings.

For the reasons set forth herein, but not limited thereto, this petition must be granted in order to end the irreparable harm petitioner is suffering.

**Dated:** September 8, 2021

Respectfully Submitted,

Laura Sheppard, Attorney at Law

# XI.
## VERIFICATION (28 U.S.C. § 2242)

I, LAURA SHEPPARD, declare that I am an attorney duly licensed and admitted to the practice of law before all courts of the State of California and before the US District Court for the Central District of California. I am the attorney for petitioner Jeffrey Perrotte in the instant matter.

I have read the foregoing Petition for Writ of Habeas Corpus and all documents lodged in support thereof. I know the contents of the foregoing petition and declare that the same are true to the best of my own personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that this Verification was executed this 8th day of September, 2021, at San Diego California.

LAURA SHEPPARD

Attorney for JEFFREY PERROTTE